**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| Ira Hobson,<br><br>*Plaintiff*,<br><br>v.<br><br>Glencore Ltd. and Cosmogony II, Inc.,<br><br>*Defendants*. | **1:21-cv-00182-WAL-GWC**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff Ira Hobson brings this action under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a citizen and resident of St. Croix, United States Virgin Islands.

2. Defendant Glencore Ltd. is a Swiss foreign business corporation, having its principle place of business in New York.

3. Defendant Cosmogony II, Inc. ("Cosmogony") is the successor-in-interest to General Engineering Corporation. Cosmogony is a U.S. Virgin Islands company, having its principle place of business in the U.S. Virgin Islands. General Engineering Corporation merged with and into U&W Industrial Supply, Inc. ("U&W"), a U.S. Virgin Islands corporation. U&W later changed its name to Cosmogony. General Engineering Corporation and Cosmogony are hereinafter referred to collectively as "GEC".

4. This Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

**Deleted:** SUPERIOR

**Deleted:** SX-2021-CV-00

**Deleted:** , General Engineering Corporation, and GEC LLC

**Deleted:** <#>Defendant General Engineering Corporation is a U.S. Virgin Islands corporation, having its principle place of business in the U.S. Virgin Islands.

**Deleted:** <#>GEC LLC

**Deleted:** <#>GEC LLC

**Deleted:** <#>, the owners of which are one or more citizens of…

**Deleted:** <#>(

**Deleted:** <#>GEC LLC

**Deleted:** <#>)

5. Venue is this District is proper pursuant to 4 V.I.C. § 78 because the conduct complained of in this Complaint was carried out in substantial part within this judicial division.

**FACTUAL ALLEGATIONS RE: THE PLAINTIFF**

6. Plaintiff worked at the Alumina Refinery from 1989 to 1995 and 1997 to 2000. During his work at the Alumina Refinery, Plaintiff worked as a laborer foreman, maintenance worker and as a mechanic.

7. In the course of his employment at the Alumina Refinery, Plaintiff was exposed to bauxite ore dusts (and their consituents and waste products), caustic soda, asbestos-containg materials ("ACM"), and alumina dust.

8. During his employments at the Alumina Refinery, Plaintiff was not provided adequate personal protective equipement to guard against the inhalation of toxic substances.

9. Plaintiff suffers from mixed-dust pneumoconiosis, which became evident 12/15/2019.

10. This disease is evidenced by a chest x-ray (read by a competent NIOSH-certified B-reader) a pulmonary function test (PFT), a physical examination, and a discussion and consideration of Plaintiff's work history, among other things.

11. Plaintiff's lung disease and injury are the direct and proximate result of Plaintiff's repeated unprotected exposures to various toxic substances during his work at the Alumina Refinery.

12. Plaintiff's lung disease is characterized by shortness of breath, diminished lung capacity, and other respiratory ailments. His injuries are current and will continue for the rest of his life. He seeks recompense for his pain and suffering; his medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of his life. And he fears the progression of his respiratory symptoms and reasonably fears that he may develop cancer as a result of persistent exposure to toxic materials and substances.

13. Plaintiff also seeks punitive damages, as Defendants' actions and inactions, separately considered, were outrageous because of a reckless indifference to Plaintiff's rights.

**FACTUAL ALLEGATIONS VIS-À-VIS INDUSTRIAL EXPOSURES**

14. The U.S. Federal Government has long regulated the limits of industrial exposure to minerals, metals, chemicals, and other agents in the workplace. And the U.S. Virgin Islands has long regulated emisisons of fugitive particulate matter.

15. Industry must take all reasonable steps to guard against the release of toxic dusts through sound engineering practices, procedures, and controls. They must conduct air and worker monitoring to assess the concentration of particulate matter.

16. Because engineering practices, procedures, and controls may not eliminate and/or reduce all dust generation, persons in industrial settings that could be exposed to excessive dust levels must be given proper, appropriate, and timely warnings, training, and personal protective equipment, including respiratory protection.

**FACTUAL ALLEGATIONS VIS-À-VIS THE ALUMINA REFINERY**

17. An Alumina Refinery operated on St. Croix from the early- to mid-1960s to 2000. The Alumina Refinery refined bauxite ore into alumina (aluminum oxide).

18. Virgin Islands Alumina Company ("VIALCO") purchased the Alumina Refinery in 1989. At that time and at all relevant times thereafter, VIALCO was the wholly-owned subsidiary of Glencore Ltd. It operated the Alumina Refinery from 1990 to 1995. Prior to operating the Alumina Refinery, VIALCO had not owned or operated any other alumina refinery. From 1990 to 1995, Glencore supplied VIALCO and the Alumina Refinery with bauxite ore.

19. During the years that VIALCO owned and/or operated the Alumina Refinery, GEC was contracted to provide construction and maintenance services.

20. Bauxite is a naturally occurring material comprised of hydrated aluminum oxides and

aluminosilicates, iron oxides, titanium dioxide, silica, beryllium, and mixtures of other materials; including, quartz, clay minerals, gibbsite [Al(OH)], boehmite [ALO(OH)], and diaspore [ALO(OH)]. Bauxite is the principle ore of alumina (AL2O3).

21. During the refining process, bauxite ore is, among other activities, crushed and ground, which continuously creates large amounts of dust. In his work at the Alumina Refinery, Plaintiff was in constant contact with, and exposed to, this unrefined bauxite dust and its constituents.

22. Caustic soda is added to the ground ore, some of which becomes airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled caustic soda dust.

23. The refinement process involves many hot processes that require the maintenance of high temperatures. To that end, the Alumina Refinery used ACM to insulate vessels, machinery, and pipe. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled ACM.

24. The finished alumina product is a white/silver powder. The alumina is highly susceptible to becoming airborne because of the prevailing trade winds. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled alumina dust.

25. The refinement process also generates a great deal of toxic industrial waste sometimes called "red mud". The chemical composition may include iron (III) oxide (Fe2O3), aluminum oxide (Al2O3), silicon dioxide (SiO2), copper (II) oxide (CuO), sodium oxide (Na2O), titanium dioxide (TiO2), potassium oxide (K2O), selenium trioxide (Se2O3), and vanadium pentoxide (V2O5), arsenic (As), lead (Pb), mercury (Hg), nickel (Ni), chromium (Cr), cadmium (Cd), as well as radioactive uranium and thorium. When red mud dries, it becomes chalky and airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled red mud dust.

26. Alumina refiners have long understood the dangers posed by exposure to bauxite ore dust, its constituent compenents and waste products (including red mud), caustic soda, ACM, and refined alumina. Research shows that exposure to these elements (or mixtures thereof) in industrial

settings can cause serious medical problems, including decreased FEV1, radiographic abnormalities, increased opacities, upper and lower respiratory symptoms (shortness of breath, wheeze, chest tightness, rhinitis), pulmonary fibrosis, mixed dust pneumoconiosis, interstitial fibrosis, fibrotic lesions, parenchymal changes, lung cancer, and aluminosis.

**CAUSES OF ACTION AGAINST GLENCORE LTD.**

**Count 1 – Chattel Known to be Dangerous for Intended Use**

27. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

28. Glencore supplied bauxite ore—a chattel—to the Aluminum Refinery for use from 1990 to 1995. It expect the Aluminum Refinery and Plaintiff to use the bauxite ore, as well as expect that Plaintiff could be endangered by the probable uses of bauxite ore—namely, refinement.

29. Glencore knew or had reason to know that bauxite ore, bauxite dusts and its constituents is dangerous or likely to be dangerous during the refinement process. It had no reason to believe that the Aluminum Refinery or Plaintiff would realize the dangerous condition of bauxite ore, bauxite dusts and its constituents. And it failed to exercise reasonable care to inform either the Aluminum Refinery or Plaintiff of the dangerousness of bauxite ore, bauxite dusts and its constituents or the facts which make bauxite ore, bauxite dusts and its constituents likely to be dangerous.

30. Plaintiff was harmed by the bauxite ore supplied by Glencore to the Aluminum Refinery.

31. Glencore directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff sustained as a result of this exposure.

**Count 2 – Chattel Unlikely to be Made Safe for Use**

32. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

33. If Glencore provided warnings and MSDS sheets to the Aluminum Refinery, those warnings and MSDS sheets went unheeded. Glencore knew or should have known that any warnings and sheets it may have provided were not being communicated to the workforce at the Aluminum Refinery.

34. Glencore knew or should have known that the bauxite ore was unlikely to be made reasonably safe before being put to the use Glencore should expect it to be put—namely, refinement into aluminum powder.

35. Plaintiff was a foreseeable user of the chattel, as well as endangered by the probable use of the chattel. He was ignorant as to the dangerous character of bauxite ore, its hazardous constitutents, and its waste products, and he was not contributorily negligent.

36. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 3 – Chattel for Use by Person Known to be Incompetent**

37. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

38. Glencore knew or had reason to know that the owners and operators of the Alumina Refinery were using the bauxite ore supplied by Glencore in a manner that involved an unreasonable risk of physical harm to Plaintiff. It should have expected that Plaintiff would be endangered by the use of bauxite ore at the Alumina Refinery.

39. In particular, Glencore knew or had reason to know that the Alumina Refinery owners and operators were incompetent. VIALCO had not previously owned or operated an alumina refinery prior to 1990 when it began operations in St. Croix. It failed to implement the necessary engineering controls to minimize worker exposure to bauxite, its constituent components, and waste products. It lacked an adequate respiratory policy to guard against the inhalation of bauxite dust, its constituent components, and waste products. It had a substandard safety department that was understaffed and/or not properly staffed by personnel with the necessary background and experience. It and its management failed to understand and/or was unconcerned with the dangers associated with bauxite dust and its constituents inhalation. It failed to implement and/or implemented substandard air monitoring or testing protocols to measure fugitive and/or bauxite dusts. And it failed to abide applicable OSHA and/or MSHA regulations regarding handling and processing bauxite ore and/or its constituent components and waste products.

40. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 4 – Chattel Used to Supplier's Business Purpose**

41. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

42. The Alumina Refinery served Glencore's business purpose during the years of VIALCO's ownership and operation. At all relevant times, Glencore operated a multinational and vertically-integrated alumina refinement portfolio, consisting of mining, shipping, refinement, smelting, and marketing/selling. Those bauxite ore served Glencore's business purposes because it was integral part of the start-to-finish operation.

43. The bauxite ore as ultimately supplied to the Alumina Refinery, where it was crushed, ground, liquified, and disposed of. Glencore should have expected that Plaintiff and other employees at the Alumina Refinery would be endangered by the probable use of the bauxite ore and bauxite dusts, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

44. Glencore failed to exercise reasonable care to make the bauxite ore safe for the use for which it was supplied. It failed to exercise reasonable care to discover the dangerous condition or chacter of the bauxite ore.it supplied. And it failed to inform Plaintiff or the other employees at the Alumina Refinery of the discover the dangerous condition or chacter of the bauxite ore it supplied.

45. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 5 – Negligent Undertaking**

46. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands.

47. Glencore undertook to render services to its subsidiary VIALCO. It should have recognized the services it provided to VIALCO were necessary for the protection of Plaintiff, generally or in particular.

48. Glencore failed to exercise reasonable care, which increased the risk of harm to Plaintiff. It undertook to perform a duty owed by VIALCO to Plaintiff.

49. Plaintiff suffered harm because VIALCO relied on Glencore to fulfill its undertaking. And he suffered harm because he relied on Glencore to fulfill its undertaking.

50. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, the refined alumina derived therefrom, caustic fumes, and asbestos.

**CAUSES OF ACTION AGAINST COSMOGONY II, INC. AS SUCCESSOR-IN-INTEREST TO GENERAL ENGINEERING CORP.**

Deleted: GENERAL ENGINEERING CORP. AND/OR GEC LLC…

**Count 6 – Negligence**

51. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. GEC is liable to Plaintiff as it acted negligently.

52. GEC's services installing, removing, and replacing ACM, which work resulted in the release of asbestos fibers into the air.

53. GEC was negligent insofar as it failed to take adequate precautions to guard against and warn of the consequences these releases. Among other things, GEC failed to adequately train its employees on how to recognize and properly dispose of ACM. It failed to adequately warn its employees and those in the vicinity of the dangers of ACM or regarding the use of appropriate PPE.

54. Further, GEC was negligent in its provision of maintenance work. It failed to adequately maintain the various mechanical components at the Alumina Refinery. In particular, the machinery used to convey and pulverize bauxite ore was constantly in poor working order, and as a result, fugitive bauxite emissions were frequent.

55. Both instances of negligent presented forseeable risks of harm—namely, that Plaintiff, his co-workers, and others would come into contact with and inhale an inordinate amount of ACM and bauxite dust.

56. GEC owed a duty of reasonable care under the circumstances. In this specific case, its duty was to perform its construction and maintenance duties with the due care necessary for a refinery contractor, with the understanding that the materials at the Alumina Refinery were dangerous and

required special precautions.

57. However, GEC violated its duty of reasonable care as detailed above.

58. GEC directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and asbestos.

**JURY TRIAL DEMANDED**

59. Plaintiff demands a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests:

a. After trial by jury, he be awarded full monetary damages afforded by law;

b. After trial by jury, he be awarded punitive damages;

c. He be awarded pretrial interest from the date of the initial Complaint through final judgment;

d. He be awarded his costs; and

e. The Court grant such additional relief as may be deemed just and proper.

**DATED:** April 28, 2021

Respectfully submitted,

/s/ C. Jacob Gower

Korey A. Nelson, Esq. (V.I. Bar No. 2012)
C. Jacob Gower, Esq. (V.I. Bar No. 2103)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq. (V.I. Bar No. 2004)
Daniel H. Charest, Esq. (V.I. Bar No. 2020)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 890
St. Thomas, USVI 00804
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com

Deleted: February 9, 2021
Deleted: 7
Deleted:
Formatted: Space After: 0 pt